UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANGEL JAMES FISHER,**

    **Petitioner,**

v.                                         Case No. 8:17-cv-243-MSS-TGW

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

**O R D E R**

Fisher petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for armed robbery and aggravated battery. (Doc. 1) The Respondent asserts that the petition is time barred. (Doc. 8) Fisher concedes that the claims in his petition are untimely and procedurally defaulted (Doc. 1 at 5, 10, 17–18) but asserts that the limitation equitably tolled, and actual innocence excuses the time bar and the procedural default. (Doc. 13) The parties submitted supplemental briefs addressing actual innocence. (Docs. 36 and 40) Fisher moves for a ruling on his petition. (Doc. 54) After reviewing the petition, the response, the reply, the supplemental briefs, and the relevant state court record, the Court **GRANTS** Fisher's motion (Doc. 54) for a ruling and **DISMISSES** the petition as time barred.

**PROCEDURAL HISTORY**

A jury found Fisher guilty of robbery with a firearm and aggravated battery with a deadly weapon. (Respondent's Exhibit 1 at 56–57) The trial court sentenced Fisher to two concurrent sentences of fifteen years in prison with a ten-year mandatory minimum term for possessing a firearm during the commission of the crime. (Respondent's Exhibit 1 at 130–33)

1

Fisher appealed, and the state appellate court affirmed. *Fisher v. State*, 117 So. 3d 415 (Fla. 2d DCA 2013) (table).

Fisher moved for post-conviction relief (Respondent's Exhibit 6 at 217–30), and the post-conviction court denied relief. (Respondent's Exhibit 6 at 235–37) Fisher filed a second motion for post-conviction relief (Respondent's Exhibit 6 at 22–71), and the post-conviction court dismissed the motion. (Respondent's Exhibit 6 at 200–97) Fisher appealed, and the state appellate court affirmed. *Fisher v. State*, 189 So. 3d 768 (Fla. 2d DCA 2016) (table). Fisher's federal petition follows.

In his federal petition, Fisher asserts that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972), by presenting at trial false testimony by a detective and by the victims of the crimes (Ground One) and violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose to the defense records for a mobile telephone used during the crimes (Ground Two). (Doc. 1 at 5–11)

## ANALYSIS

Under 28 U.S.C. § 2244(d)(1), a one-year limitation applies to a Section 2254 petition and begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Fisher contends that his *Giglio* and *Brady* claims are based on "new evidence" and explains that he did not raise the claims in state court because he did not discover the evidence until after the time to raise the claims expired. (Doc. 1 at 5, 10) He attaches to his federal petition (1) a response from T-Mobile to a prosecutor's subpoena for information concerning the subscriber of telephone number 813-484-9794 (Doc. 1-1 at 2), and (2) a page from police report number 2010-253449 that states that a detective discovered from the subpoenaed records that no records existed for the telephone number after December of 2009. (Doc. 1-2 at 2) Evidence at trial proved that the robbery and aggravated battery occurred on May 21, 2010. (Respondent's Exhibit 1a at 117–18) Fisher alleges that the prosecutor failed to disclose to the defense T-Mobile's response to the subpoena and that the documents demonstrate that the witnesses falsely testified. (Doc. 1 at 5–8, 10–11)

Fisher's trial occurred on August 17, 2011. (Respondent's Exhibit 1a at 93) On August 12, 2010, the prosecutor filed a notice of discovery and disclosed to trial counsel the police report as follows (Doc. 37-2 at 147, 150):

>   In addition to the above, be advised of the following: A copy of HCSO agency report number 2010-00253449 enclosed. Regarding statements of the accused, see law enforcement reports and interview witnesses listed. All witnesses listed in the police report and additional witnesses may be called to testify.

On September 1, 2010, T-Mobile responded to the subpoena. (Doc. 1-1 at 2) On September 14, 2010, the prosecutor filed a supplemental notice of discovery and disclosed to trial counsel the response to the subpoena as follows (Doc. 37-2 at 152):

>   (J) Tangible papers [and] objects to be used at trial not belonging to or obtained from the accused:

3

> A copy of the subscriber information [ ] for 813-484-9794 is enclosed.
>
> Category C Witnesses pursuant to Rule 3.220(b)(1)(A)(iii), Fla. R. Crim. P.
>
> Custodian of Records
> T-Mobile, 4 Sylvan Way, Parsippany, NJ, 07064.

Under Section 2244(d)(1)(D), the limitation begins to run "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Because the prosecutor disclosed to the defense both the police report and T-Mobile's response to the subpoena before trial and filed a notice to memorialize the disclosure, Fisher could have discovered both documents with reasonable diligence before trial. Consequently, Section 2244(d)(1)(D) does not apply. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014) ("'The due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered.'") (quoting *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012)).

Under Section 2244(d)(1)(A), the limitation began to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." On May 29, 2013, the state appellate court affirmed Fisher's convictions and sentences in a decision without a written opinion. *Fisher*, 117 So. 3d at 415. Because the state supreme court lacked jurisdiction to review the unelaborated decision, Fisher could have sought further review only in the United States Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (citing *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006)). Fisher did not seek further review, and the time to seek further review

4

expired ninety days after the state appellate court's decision — August 28, 2013. The limitation period started to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bates*, 964 F.3d 1326, 1329.

The limitation period tolls while "a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). The limitation period tolled on May 28, 2014, when Fisher placed in the hands of prison officials for mailing his first post-conviction motion. (Respondent's Exhibit 6 at 230) At that time, 272 days had run on the limitation period. On August 25, 2014, the post-conviction court denied the motion (Respondent's Exhibit 6 at 235–37), and Fisher did not appeal. The limitation period continued to toll until September 25, 2014, when the time to appeal expired. Fla. R. App. P. 9.110(b) and 9.141(b)(1). *Cramer v. Sec'y, Dep't Corrs.*, 461 F.3d 1380, 1383 (11th Cir. 2006).

The limitation tolled on October 26, 2014 (Respondent's Exhibit 6 at 69), when Fisher placed in the hands of prison officials for mailing his second post-conviction motion. At that time, 302 days had run on the limitation period. The post-conviction court dismissed the motion as successive (Respondent's Exhibit 6 at 200–02), Fisher appealed, and the state appellate court affirmed. (Respondent's Exhibit 9) The limitation period continued to toll until April 20, 2016, when mandate issued on appeal. (Respondent's Exhibit 10)

The limitation period resumed and expired sixty-three days later — June 23, 2016. Fisher placed in the hands of prison officials for mailing his Section 2254 petition on January 26, 2017. (Doc. 1 at 19) Consequently, his Section 2254 petition is untimely.

**Equitable Tolling**

Fisher asserts that the limitation period equitably tolled because the prison placed him in confinement between December 5, 2012, and December 18, 2014, and between June 19,

5

2015, and March 13, 2017. (Doc. 13 at 4–6) He contends that, during these periods, he lacked access to a prison law clerk who would have assisted him with timely filing his petition. (Doc. 13 at 4–5) He further contends that he was unable to timely file a petition because, during the second period of confinement, a prison guard used excessive force against him, and he was engaged in a civil rights action against the prison guard. (Doc. 13 at 6) He submits documents from the prison to demonstrate that the prison placed him in confinement. (Doc. 14-2)

Equitable tolling applies to a Section 2254 petition and requires the petitioner to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "As an extraordinary remedy, equitable tolling is 'limited to rare and exceptional circumstances and typically applied sparingly.'" *Cole*, 768 F.3d at 1158 (citation omitted). "'The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.'" *Cole*, 768 F.3d at 1158 (quoting *Holland*, 560 U.S. at 653). A petitioner must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). "*Pro se* litigants, like all others, are deemed to know of the one-year statute of limitations." *Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2000).

"*Akins*[*v. United States*, 204 F.3d 1086 (11th Cir. 2000),] suggests that lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004). Even if they might in some circumstances support a claim for equitable tolling, Fisher's circumstances did not, in fact deprive him of the ability to pursue his rights.

6

During the first period of confinement between December 5, 2012, and December 18, 2014, Fisher drafted and mailed a fourteen-page typewritten post-conviction motion (Respondent's Exhibit 6 at 217–30), a three-page motion to amend (Respondent's Exhibit 6 at 231–34), and a twenty-four-page typewritten second post-conviction motion. (Respondent's Exhibit 6 at 22–45) During the second period of confinement between June 19, 2015, and March 13, 2017, Fisher drafted and mailed a notice of appeal of the order dismissing his second post-conviction motion (Respondent's Exhibit 6 at 298–99), a twelve-page brief on appeal (Respondent's Exhibit 7), and a twelve-page civil rights complaint and other miscellaneous filings in federal court. *Fisher v. Jones*, No. 5:16-cv-108-MW-HTC (N.D. Fla.), ECF Nos. 1, 2, 5, 7, 9, 12, 15, 17, and 31. Despite any injury Fisher may have suffered caused by the excessive force, Fisher capably litigated his federal civil rights action through service of process, discovery, partial summary judgment, and settlement. *Fisher*, No. 5:16-cv-108-MW-HTC (N.D. Fla.), ECF Nos. 81 and 144. Also, Fisher drafted and mailed his Section 2254 petition on January 26, 2017, almost two months before the second period of confinement concluded. (Docs. 1 at 19 and 13 at 6)

Because Fisher fails to demonstrate both that confinement prevented him from timely filing his federal petition and that he exercised reasonable diligence in pursuing federal habeas relief, the limitation period did not equitably toll. *San Martin*, 633 F.3d at 1267.

**Actual Innocence**

Fisher asserts that actual innocence excuses the time bar. (Doc. 13 at 6–14) He contends that T-Mobile's response to the subpoena is new reliable evidence that demonstrates his actual innocence. (Doc. 13 at 6–9) "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court

7

that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. "'[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Rozzelle v. Sec'y, Fla. Dep't Corrs.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Fisher contends that T-Mobile's response to the subpoena is "new" evidence because the prosecutor did not introduce the response into evidence at trial. (Doc. 13 at 6–9) As explained above, the prosecutor disclosed to the defense T-Mobile's response to the subpoena eleven months before trial. (Respondent's Exhibit 1a at 93 and Doc. 37-2 at 152) Because Fisher could have discovered T-Mobile's response with reasonable diligence before trial, the document is not "new" evidence that supports actual innocence. *Goldblum v. Klem*, 510 F.3d 204, 226 n.14 (3d Cir. 2007) ("Evidence is not 'new' if it was available at trial, but a petitioner 'merely chose not to present it to the jury.'") (citation omitted).

Even if T-Mobile's response is "new" evidence, T-Mobile's response does not demonstrate actual innocence. Fisher contends that T-Mobile's response demonstrates that T-Mobile disconnected telephone number 813-484-9794 on December 18, 2009, and asserts that he could not have used the telephone number to commit the robbery and aggravated

8

battery on May 21, 2010. (Doc. 13 at 9–10) However, evidence at trial proved Fisher's identity, even without his connection to the mobile telephone.

At trial, Manuel Canal[1] testified that he responded to an advertisement on the internet for the sale of a black Nissan Maxima. (Respondent's Exhibit 1a at 118) The seller identified herself as Kelly and gave Canal her mobile telephone number — 813-484-9794. (Respondent's Exhibit 1a at 119) Kelly agreed to show Canal the car at an address in Brandon, Florida at 8:00 P.M. (Respondent's Exhibit 1a at 120) Canal drove to the address with his wife and son, who was nine, and called Kelly when he arrived. (Respondent's Exhibit 1a at 121) Kelly told Canal that her husband had taken the car to the gas station and asked Canal if he wanted to wait inside her home; Canal refused Kelly's offer. (Respondent's Exhibit 1 at 121)

Shortly after, a male approached Canal's car and said that Kelly wanted to know if Canal wanted to wait inside, and Canal refused again. (Respondent's Exhibit 1a at 122–23) The male hit Canal's face with a nine-millimeter handgun and pointed the gun inside the car. (Respondent's Exhibit 1a at 123, 127) Canal exited his car to protect his family, and the male pointed the gun at him and said, "Give me the money, I know you got it." (Respondent's Exhibit 1a at 123) Canal gave the male $860.00 in cash. (Respondent's Exhibit 1a at 124–25) The male hit Canal's face again with the gun. (Respondent's Exhibit 1a at 126)

A streetlight illuminated the area, the male's face was uncovered, and Canal stood about an arm's length away from the male. (Respondent's Exhibit 1a at 125–26) Three weeks after the robbery, Canal identified Fisher as the robber in a photographic lineup

---

[1] Canal admitted that he was an eleven-time convicted felon. (Respondent's Exhibit 1a at 133)

9

prepared by a detective and was "one hundred percent" certain. (Respondent's Exhibit 1a at 130–32, 159–64) The prosecutor introduced into evidence the photographic lineup signed by Canal identifying Fisher as the robber. (Respondent's Exhibit 1a at 129–32 and Exhibit 6 at 117–23) Also, Canal identified Fisher in court as the male who robbed and battered him. (Respondent's Exhibit 1a at 127–28)

Canal's wife testified that, after she, Canal, and their son waited twenty minutes in the car, the male appeared, hit Canal's face with a gun, demanded money, continued to hit Canal, and ran away after Canal gave him the money. (Respondent's Exhibit 1a at 177–79) Canal's wife identified Fisher as the robber in a photographic lineup prepared by the detective. (Respondent's Exhibit 1a at 182–83) The prosecutor introduced into evidence the photographic lineup signed by Canal's wife identifying Fisher as the robber. (Respondent's Exhibit 1a at 160–61 and Exhibit 6 at 179–85) However, Canal's wife was not "one hundred percent" certain about her identification. (Respondent's Exhibit 1a at 190) Also, Canal's wife identified Fisher in court as the male who robbed and battered Canal. (Respondent's Exhibit 1a at 180)

After Canal and his wife met with the detective and identified Fisher in the photographic lineup, both received paperwork in the mail with Fisher's name and looked at a photograph of Fisher on the internet. (Respondent's Exhibit 1a at 145, 191)

Canal provided Kelly's telephone number — 813-484-9794 — to the detective. (Respondent's Exhibit 1a at 154) The detective learned that Erika Cloma subscribed to the telephone number. (Respondent's Exhibit 1a at 155) Cloma told the detective that she had given the telephone registered to the number to Shakena Alexander. (Respondent's Exhibit

1a at 155–56) Fisher, who was Alexander's boyfriend, also used the telephone. (Respondent's Exhibit 1a at 156)

Cloma testified that she subscribed to several telephone numbers with a T-Mobile family plan, and Alexander, the aunt of Cloma's children, used the telephone registered to 813-484-9794. (Respondent's Exhibit 1a at 172) Cloma confirmed that she told a detective that Alexander used the telephone and that the telephone was later disconnected (Respondent's Exhibit 1a at 172):

> [Prosecutor:] And did you tell law enforcement that Miss Alexander actually had that phone number?
>
> [Cloma:] Yes. I told him that she had that number. We had a different number because I had a new cell number through Sprint. The T-Mobile account was disconnected a couple of days after that. It had some minutes on that phone that she had.

On cross-examination, Cloma testified that, before May of 2010, when the crimes occurred, Alexander had reported to T-Mobile that a person stole the telephone (Respondent's Exhibit 1a at 173–74):

> [Trial counsel:] You were actually with her at the T-Mobile store when she reported the cellphone stolen, correct?
>
> [Cloma:] She called that in.
>
> [Trial counsel:] And that was prior to May of last year, correct?
>
> [Cloma:] I want to say so because I purchased the new cellphones I believe March, beginning of April, end of March.

11

Fisher testified in his own defense. He testified that, the evening of the crimes, he was with Alexander and Alexander's family at a fish fry. (Respondent's Exhibit 1a at 199–200) Fisher showed the jury tattoos on his neck, his arms, his hands, and his fingers. (Respondent's Exhibit 1a at 201–03) Neither Canal nor his wife told the detective that the robber had tattoos. (Respondent's Exhibit 1a at 144, 186)

Fisher admitted that he used the telephone that Cloma had given Alexander. (Respondent's Exhibit 1a at 200) Fisher claimed that Alexander lost the telephone (Respondent's Exhibit 1a at 200–01):

> [Trial counsel:]   And what happened to that cellphone?
>
> [Fisher:]   Come up missing, stolen. It come up missing, but we tried to find it. We couldn't find it, so more than likely stolen.
>
> [Trial counsel:]   Do you recall when it was taken?
>
> [Fisher:]   Not really, no.

Fisher testified that Alexander reported the telephone stolen in March of 2010. (Respondent's Exhibit 1a at 203) On cross-examination, he clarified that both he and Alexander reported the telephone stolen (Respondent's Exhibit 1a at 205–06):

> [Prosecutor:]   Did — now, you talked about that Miss Alexander reported the phone stolen. Who did she report the phone stolen to?
>
> [Fisher:]   I like to say we both reported the phone stolen.
>
> [Prosecutor:]   Who was with you when you did?
>
> [Fisher:]   Just me, I and her. The person that was contacted was the company, the company that's in control of the phone in the account.

> [Prosecutor:]   Did you report it to the police if you thought it was stolen?
>
> [Fisher:]   No, ma'am.

The police report dated August 10, 2010, and attached to Fisher's federal petition, states that Cloma "cancelled" the telephone service because of a conflict between her and Alexander and that the telephone continued to work after the cancellation (Doc. 1-2 at 2):

> Detective Suttle confirmed the cell phone carrier for number 813-484-9794 was T-Mobile. Detective Suttle obtained a subpoena for the cell phone records and learned that no records existed for that number past December 2009. I later learned from Cloma that the cell phone (813-484-9794) was subscribed to her, but the phone actually belonged to her boyfriend's sister, Shakena Alexander. Cloma further confirmed that she and Alexander began to experience conflict in their relationship so in December 2009, she (Cloma) contacted T-Mobile and cancelled the cell phone service, but the phone continued to work even up until this present day (06/09/2010).

T-Mobile's response to the subpoena dated September 1, 2010, and attached to Fisher's federal petition, demonstrates that the account for the telephone numbers 813-484-9794 was "suspended" on December 18, 2009 (Doc. 1-1 at 2):

> Billing Account Number:   578279633
>
> Billing Account Status:   Suspended
>
> Billing Account Name:   Erica Cloma
>
> Date of Birth:   [redacted]
>
> Social Security Number:   N/A
>
> Company Name:   Cloma
>
> Address:   4007 S. 88th St., Tampa, FL, 33619
>
> Telephone 1:   N/A
>
> Telephone 2:   N/A

13

| | |
|---|---|
| ISM1: | 310260631829457 |
| Mobile Number: | 813-484-9794 |
| Mobile Number Name: | Kena Miss |
| Date Account Established: | 07/15/2008 |
| MSISDN Status: | Suspended |
| Disconnect Type and Date: | FlexPay-Non-Payment 12/18/2009 |
| Post Paid/Pre-Paid: | Post-Paid-Prod |
| Last Refill Date: | N/A |
| Ported Indicator: | Regular |

T-Mobile's response does not demonstrate Fisher's actual innocence. Cloma and Fisher testified that Alexander reported the telephone stolen. (Respondent's Exhibit 1a at 200–01, 205–06) However, Cloma told the detective that she "cancelled the cell phone service" because of a conflict between her and Alexander. (Doc. 1-2 at 2) Also, T-Mobile's response to the subpoena states that the telephone service was "suspended" on December 18, 2009. (Doc. 1-1 at 2) Cloma told the detective that she believed that the telephone continued to work even after the suspension. (Doc. 1-2 at 2) During her testimony at trial, she explained that the telephone "had some minutes," after the suspension. (Respondent's Exhibit 1a at 172) Also, Canal testified that, on the day of the crimes, he called and texted Kelly and received calls and texts from Kelly who used the telephone number. (Respondent's Exhibit 1a at 118–21, 154–55)

T-Mobile's response does not convincingly demonstrate that the telephone did not work on the day of the crimes. The response does exclude the reasonable possibility that the

telephone still worked with prepaid minutes, even after the suspension. A reasonable juror would conclude that the telephone continued to work after the suspension. *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The 'reasonable doubt' standard is not to be determined on the basis of the district court's independent judgment, but should be based on the district court's 'probabilistic determination about what reasonable, properly instructed jurors would do.'") (quoting *Schlup*, 513 U.S. at 329).

Even if the telephone number did not work and Canal was mistaken about the telephone number, Canal and his wife independently identified Fisher as the robber in a photographic lineup.[2]

A reasonable juror would consider all the evidence, including the credible identifications by Canal and his wife, to conclude that Fisher is guilty beyond a reasonable doubt. *Rozzelle*, 672 F.3d at 1017 (quoting *House*, 547 U.S. at 538) (requiring the federal habeas court to consider when evaluating actual innocence "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'"). *Kuenzel v. Comm'r, Ala. Dep't Corrs.*, 690 F.3d 1311, 1318 (11th Cir. 2012) ("While the 'new evidence' Petitioner has offered might have strengthened Petitioner's defense if presented at trial, Petitioner has not offered sufficient 'new evidence' of the powerful kind that would individually or collectively 'show that it is *more likely than not* that *no reasonable juror* would have convicted him in the light of the new evidence.'") (quoting *Schlup*, 513 U.S. at 327) (italics in original).

---

[2] Also, though not dispositive of his claim, it is worth noting that at sentencing, when requesting a youthful offender sentence under Section 958.04, Florida Statutes, Fisher confessed to committing the crimes. (Respondent's Exhibit 1b at 11–14)

15

Because Fisher fails to submit new reliable evidence that demonstrates actual innocence, actual innocence does not excuse the time bar. Accordingly, Fisher's petition (Doc. 1) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Fisher and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Fisher neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on February 5, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE